7538 .

McCORMICK v. COLUMBIA ELECTRIC STREET RAILWAY, LIGHT & POWER CO.

1. Carrier—Evidence.—Rules of a carrier of passengers for the conduct of its employees, the disobedience of which tended to show negligence which contributed to the injury, is admissible in an action for injury from negligence of the carrier's employees whether the injured knew of the rule or not.

2. Ibid.—Street Railway.—Charge here held not to impose upon street railway companies the duty of: (1) giving signals at crossings, (2) doing whatever a steam railway would do to signal its approach to a crossing, (3) giving specific warning on approaching crossings, (4) doing what the statute law required as to signals, but only to do the things dictated by common and ordinary prudence under the circumstances.

3. Punitive damages may be awarded where a street railway ran its car into a wagon crossing the street, which was seen by the motorman several hundred yards ahead but made no effort to notify the driver nor to stop the car nor to have it under control.

Before Klugh, J., Richland, May, 1909.  Affirmed.

Action by G. W. McCormick against Columbia Electric Street Railway, Light & Power Co. From judgment for plaintiff, defendant appeals.

*Messrs. Barron, Moore & Barron and R. B. Herbert,* for appellant, cite: *Rules of carrier as evidence:* 70 Am. St. R., 347; 77 N. W. R., 433; 136 Ala., 462; 136 Ind., 188. *Punitive damages:* 80 S. C., 211; 48 S. C., 463, 51 S. E., 919, 52 S. E., 41; 42 S. E., 196; 13 Cyc., 112; 32 S. E., 570.

*Messrs. W. Boyd Evans* and *Lawson D. Melton,* contra, cite: *Rules as evidence:* 6 Thomp. on Neg., sec. 7810; 68 N. H., 247; 75 Ill., 490; 8 Ency., 954; 103 Ga., 333. *Duty of carrier to give signals at crossings:* 2 Thomp. on Neg., sec. 1392; 9 Wash., 120; 61 N. J. L., 554; 5 A. & E. R. Cas. (N. S.), 599; 59 N. J. L., 577; 71 N. Y., St. R., 489; 45 At. R., 807; 34 App. Div., 248; 2 Thomp. on Neg., secs. 1374, 1399; 68 Hun., 369; 23 Wash., 401; 43 Neb., 237; 22 App. Div., 426; 70 N. Y. St. R., 753, 755; 3 Ut., 243; 4 A. & E. R. Cas. (N. S.), 77; 16 App., 83; 129 N. Y., 125; 97 Cal., 553; 9 A. & E. Ann. Cas., 836. *Violating ordinance is negligence:* 83 S. C., 354; 29 Cyc.. 4436; 21 Ency., 478; 23 Ency., 759.

April 7, 1910. The opinion of the Court was delivered by

Mr. Justice Hydrick. This is an appeal from a judgment recovered by plaintiff for personal injuries, caused by collision with one of defendant's cars. Plaintiff was driving a covered dairy wagon along Elmwood avenue, in the city of Columbia, on which defendant's track is laid, and was approaching the track obliquely to cross at its intersection with Lincoln street. He heard the noise and signals of a car, coming up behind him, looked and saw it, and checked his horse to let it pass. Immediately after it passed, he started across the track and was struck by another car, which was following the first. The testimony was con-

flicting as to the distance between these cars. Some of the plaintiff's witnesses said they were within one hundred feet of each other. Others said they were running very close together and very rapidly. A rule of the company provides: "Except when closing up at terminals or junctions, cars in the same direction must be spaced at least two hundred feet." There was testimony that the car which struck plaintiff was running from ten to twelve miles an hour; that the track was wet and slippery from recent rains; that no signals of its approach were given, though the motorman and conductor saw plaintiff several hundred yards ahead, but did not think he was going to cross. The motorman said he did not apply the brakes till he saw plaintiff start across the track, about sixty feet ahead of the car; that, at the speed he was running a car could be stopped within about one hundred feet, but not within two hundred feet, if the track is wet and slippery. The conductor said it could be stopped within a car length—thirty or forty feet. Some of the witnesses said the car ran half a block after it struck plaintiff's wagon, though the motorman said he did all in his power to stop it before the collision, and that he did stop it within a car length after the collision. The conductor said it was the duty of the motorman to slow down if he saw a vehicle approaching the track at a crossing, and he did not know whether or not it would attempt to cross.

The first exception is that it was error to admit in evidence the rule of the company requiring cars to be spaced two hundred feet, except at terminals or junctions; because it did not appear that plaintiff knew of the existence of the rule, and relied upon it in regulating his conduct, and because it was intended only for the guidance of defendant's employees in the operation of its cars.

Though it has been the common practice in this State, in cases like this, to admit in evidence the rules of the company, governing the conduct of its employees, and the move-

ments of its trains and cars, this is the first time their admissibility has been presented to this Court for decision.

In other jurisdictions, the authorities are in conflict. The argument against the admission of the rules, unless they are known to the person injured, and he relied upon them in regulating his conduct, or unless a custom has grown up, based upon the assumption that they will be obeyed, is most strongly stated in *Fonda* v. *St. Paul City Ry. Co.,* 71 Minn., 438; 70 Am. St. Rep., 341, and in *Isaacson* v. *Duluth St. Ry. Co.,* another Minnesota case, reported in 77 N. W., 433.

It is that the corporation cannot, by the adoption of rules, fix the standard of its duty to the public. That is fixed by the law. The rules may require more or less than the law requires, yet the rights of the parties must be determined by the law. Again, to admit the rules on the ground that they are tantamount to an admission that reasonable care requires the exercise of the precautions therein prescribed, in effect, holds those whose rules require a higher degree of care for the protection of the public to a stricter liability than those whose rules require a less degree of care; and such a course tends to make it advantageous for such corporations to have no rules at all, whereas they should be encouraged to adopt such rules as they may think proper, out of abundance of caution for their own protection, and for the protection of the public.

The argument is plausible, but we think the fallacy of it lies in the failure to distinguish between evidence, which tends to establish a fact, and the law, which determines the rights of the parties, under the facts established. While it is true, a plaintiff in such cases, sues for the violation of a duty imposed by law, and not for the violation of the rules adopted by the master for the guidance of his servants in the discharge of their duties to him, and of his duties to the public, still the disobedience of those rules may tend to show failure in the discharge of the master's duties to the

public, imposed by law. It should be presumed that a jury will hold the master to no greater or no less liability than is imposed by the law, as declared to them by the Court, without regard to the rules of the master for the guidance of his servants, whether they require more or less than the law requires. The servant is presumed to know the rules of his master, and it is his duty to obey them. Therefore, disobedience of them may be an important factor in determining his mental attitude in the discharge not only of his duties to his master, but also of his master's duties to the public.

Amongst the primary duties and obligations which railway corporations assume by the acceptance of their charters, is the operation of their roads under such conditions, and in such manner as to afford reasonable protection to the general public, at least within the limits prescribed by law. This imposes upon them the correlative duty to adopt and enforce reasonable rules tending to that end. The failure to do so might be shown as evidence of negligence by omission, for negligence lies in omission as well as in commission in failing to do what reasonable prudence requires, as well as in doing what it forbids. It is inconceivable that a railway corporation could conduct a business so varied and complex without the adoption of suitable rules and regulations for the guidance of its employes.

Moreover, the Court cannot say that the rule in question was adopted solely for the guidance of the employees of the company in protecting themselves and its property. It may have been intended also for the protection of passengers against injury by collision of the cars with each other, and pedestrians and others against collision with the cars in crossing the track. But, even if we assume that it was intended solely for the guidance of the employees, that cannot help the defendant's case, for its violation was evidence tending to show negligence on the part of the employees in charge of the car, and the evidence tended to show its

breach contributed to the plaintiff's injury. Such rules are held admissible in *Lyman* v. *Boston etc. R. R.* (N. H.), 11 L. R. A., 364; *Chicago Ry.* v. *Krayenbuhl,* 65 Neb., 889, 59 L. R. A., 920; *Lake Shore etc.* v. *Ward* (Ill.), 26 N. E., 520; *Railroad Co.* v. *Williams,* 74 Ga., 723, reaffirmed in *Atlanta Con. St. Ry. Co.* v. *Bates,* 103 Ga., 333, 30 S. E., 41.

The jury were instructed, in part, as follows: "It is the duty of both the railroad and any citizen in using a crossing, to be on the lookout so as to keep out of the way of each other, and to keep from inflicting injury upon the other, and inasmuch as the railway, by the use of its cars, is capable of inflicting much greater injury upon a citizen crossing a street, than the citizen is of inflicting injury upon the railroad company, it is the duty of the railroad, as far as it can, consistent with the ordinary operation of its cars, to not only be on the lookout for anybody who may be crossing the street, or approaching or using the track, but to give some kind of warning or notice of the approach of the railroad cars; whatever a railroad of ordinary prudence would use, a street railway is bound to use as a means of notifying people and to warn people that its car is about to cross the street; and, therefore, people must be on the lookout and avoid danger; if that be by ringing a gong, or blowing the whistle, or putting a watchman or some person there on the lookout on a street crossing, or some person to walk in front of the car until it pass over the crossing, in order to keep out of the way whatever ordinary prudence would dictate is what is the duty of the railroad to observe. If the statute law of the State has prescribed that a street railway must ring its bell, or take any other means of giving special notice of its coming, that becomes an imperative duty of the railroad, and they cannot neglect that without being guilty of negligence; but it may cross a street without doing any special thing,

unless that special thing is dictated by common ordinary prudence."

The errors assigned are: 1. In charging that a street railway must give some signal at a crossing; 2. In charging that it is the duty of a street railway to do whatever a steam railway would do to signal the approach of its cars to a crossing, thereby imposing on defendant a higher degree of care than the law requires; 3. In suggesting specific acts, which the defendant should do to warn the people that its cars are about to cross the street; 4. In charging that a railroad company must do what the statute law prescribes, or be held guilty of negligence, without telling the jury that there is no statute requiring a street railway to give signals at a crossing.

The charge of a judge should be construed as a whole and in the light of the testimony in the case. Sections 551 and 559 of the ordinances of the city were in evidence. Section 551 provides, in part, that drivers of cars "shall not run the cars at a speed greater than six miles an hour, (subsequently amended so that, at the time of this accident, the speed allowed was not exceeding ten miles an hour on Main street, and twenty miles an hour on other streets), and shall use all exertions to avoid collisions, giving due notice to the drivers of other vehicles and foot passengers to prevent the same." Section 559 provides that "the conductor and motorman or driver of each car shall keep a vigilant watch of all vehicles and persons on foot, especially children, either on the track or moving towards it, and, on the first appearance of danger to such vehicles or persons, the car shall be stopped in the shortest time possible."

When read in the light of these circumstances and of the testimony which tended to show that plaintiff's wagon was approaching the track for the purpose of crossing at a street crossing, and that he was seen by the conductor and motorman in ample time to warn him of the approach of the car, and that no such warning was given, and that the car was

not under control, it will be seen that the charge was free from either of the errors assigned.

The ordinances of the city, within its territorial limits, have the force and effect of statutes. Under the circumstances, they required proper warning to be given of the approach of the car to the crossing. In charging "whatever a railroad of ordinary prudence would use (as a means of warning people that its cars are about to cross a street), a street railway is bound to use," the Court did not impose upon defendant the duty of doing what a steam railroad of ordinary prudence would do. The isolated sentence quoted might possibly be so construed; but, when considered in connection with the context, it clearly appears that the word "railroad" was used, not only in that sentence, but in other parts of the charge above quoted, interchangeably with the words "street railway," and that it was not intended to convey and did not convey the idea that appellant was to be held to the same degree of care as a steam railroad.

The standard of care to which the jury were told the defendant should be held was that fixed by law—ordinary prudence. The jury were not told that defendant should do any specific thing to signal the approach of its cars, but that if a railroad of ordinary prudence would do it by ringing the gong, or blowing the whistle, or putting a watchman there, or some person to walk in front of the car till it had passed the crossing, then the defendant should do that, and, as if further to emphasize the standard of care required, the Court added: "Whatever ordinary prudence would dictate is what it is the duty of the railroad to observe."

In illustrating the force and effect of the ordinances, the Court told the jury that, if a statute prescribes the doing of some particular thing, the railroad cannot neglect it, without being guilty of negligence; but, as the ordinances in evidence do not require the giving of any particular signal, he adds; "but it may cross a street without doing any special

thing, unless that special thing is dictated by common ordinary prudence." We do not think the defendant was prejudiced by the instruction.

The preliminary statement of the testimony shows there was no error in submitting the question of punitive damages to the jury.

Judgment affirmed.