15592

MELTON v. ATLANTIC COAST LINE R. CO. *ET AL.*

(27 S. E. (2d), 490)

*Messrs. Dargan & Paulling,* of Darlington, S. C., *Mr. John F. Wilmeth* of Hartsville, S. C., and *Messrs. Woods & Woods* of Marion, S. C., Counsel for Appellants,

*Messrs. Mozingo & Watts,* of Darlington, S. C., Counsel for Respondents,

November 30, 1943.

CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, delivered the unanimous Opinion of the Court:

The respondent, Mason Melton, was riding in his automobile in the town of Darlington on March 31, 1941, and suffered personal injuries and property damage in a collision with a train of the Atlantic Coast Line Railroad Company at the Washington Street crossing. A trial was had before his Honor, Judge G. B. Greene, and a jury in the Court of Common Pleas for Darlington County. The plaintiff obtained a verdict for actual damages against the railroad company and its engineer, C. L. Fowler.

This was the same automobile and the same collision which were involved in the case of Pearl Norwood, as Administratrix of the estate of John A. Norwood, deceased,

against these two defendants, 203 S. C., 456, 27 S. E. (2d), 803, the opinion in which was recently filed. Although the present case was tried at a later term of the Court, the facts relating to the collision are in all-important respects the same as in the *Norwood case,* and so it will be unnecessary to set them out here in detail.

Unlike the Norwood trial, however, in this case the jury inspected the crossing, the railroad company having placed two boxcars and a gondola on the side track at the place where the plaintiff's witnesses said they were at the time of the collision.

It is contended by the appellants that the presiding Judge was in error in the following respects: (1) In refusing to direct a verdict for the defendants on account of failure of proof of the plaintiff's cause of action; (2) in refusing to direct a verdict for the defendants on account of contributory negligence and willfulness of the plaintiff and of the driver; (3) in refusing to sustain all or at least one or more of the defendant's motions made at the close of all the testimony, to withdraw from the jury the various specifications of negligence and willfulness on the part of the defendants alleged in the complaint; and (4) in not reducing the verdict of the jury on the defendant's motion for a new trial.

An examination of the facts leading up to the collision, as set forth in the opinion in the *Norwood case,* will clearly show that the evidence of the plaintiff presented issues of negligence and willfulness for submission to the jury.

What has been said in the *Norwood case* as to the reasonable inference of a lack of "gross or willful" negligence on the part of the driver contributing to the injury will apply as well to the present appeal. To that it may be added that the testimony in this action shows that there was a reasonable inference that the plaintiff himself exercised at least slight care for his own safety. He testified that the automobile had good lights and brakes; that

Hazel Norwood had ample room to drive; and that he himself as well as the driver looked both ways and listened for the approach of a train before entering the right-of-way of the railroad company.

This brings us to the third ground of error set forth above, and we shall take up in order the specifications of negligence and willfulness which the defendants sought, at the conclusion of the evidence, to have withdrawn from the consideration of the jury.

We think that the Circuit Judge correctly refused to withdraw from the jury the specification charging the defendants with failure to keep a reasonably proper and careful lookout for travelers including the plaintiff. One of the plaintiff's witnesses testified that soon after the collision the engineer made a statement that he did not see the automobile until he was "right on it." The engineer testified at the trial that he did not see it until his locomotive was fifty feet from the crossing. He could have seen the crossing from about Broad Street, which was 289 feet from the place of the collision. He said that there were no freight cars on the side track, and while he did testify that he first saw the automobile when it was in front of the Epps store, 148½ feet from the main line, we think that it was a question for the jury to say whether or not by the exercise of due care he could have seen the automobile before the train reached a point fifty feet from the crossing. The Circuit Judge could not assume as a fact that the box cars were, or were not, on the side track.

In submitting to the jury the specification of negligence as to running the train over the crossing at a high and dangerous rate of speed, we think that the trial Judge made the proper ruling, since there was testimony that the train was being operated at a speed of from forty to forty-five miles an hour through a thickly popu-

lated section of the town and over a street and state highway. Such speed or even a much greated speed is of course not negligence in all cases, but the rate of speed to be used in a particular case depends upon the nature of the crossing and other circumstances shown by the evidence. 52 C. J., 243. Under the facts here whether or not the train was being operated at a safe or an excessive rate of speed, in the circumstances and under the conditions then existing, presented a question for the jury. *Moore v. Atlantic Coast Line Railroad Company,* 192 S. C., 406, 7 S. E. (2d), 4.

■ The Circuit Judge was clearly right in refusing to withdraw from the jury the specification charging that there was a failure to give the statutory signals. Several witnesses for the plaintiff testified positively that the whistle was not blown and the bell was not rung as the train approached the crossing. This will apply also to the specification alleging failure on the part of the defendants to give warning under the common law by the ringing of a bell, blowing of a whistle, or otherwise.

■■ Another specification charged the company with negligence and willfulness in maintaining an unsafe and dangerous public crossing at Washington Street, in obstructing the view of an approaching train by reason of the freight cars placed on a side track and along the highway, so that one traveling in a northerly direction on the street had no view of an approaching train until the railroad track was reached; and in allowing these freight cars to remain in close proximity to the railroad crossing, obstructing the view of approaching trains.

A railroad company has a right to place freight cars on its side tracks, and ordinarily the doing of this lawful act is not negligence in itself. 52 C. J., 194. However, such obstructions are to be considered in connection with the operation by the railroad of its trains, and a greater degree of care is

entailed upon it in approaching a crossing where such obstructions exist. It is said in the case of *Carter v. Atlantic Coast Line Railroad Company*, 194 S. C., 494, 10 S. E. (2d), 17, 22: "And it would seem clear that the mere location of the depot and the boxcars could constitute negligence only when taken in conjunction with the operation of the train; and if the train was operated without negligence or willfulness, it is difficult to see how the verdict against the railroad company can stand."

This specification is to be taken in connection with the evidence of negligence in the operation of the train, including the testimony as to a failure to keep a proper lookout, failure to give the statutory or common law signals, and running at an excessive rate of speed. In view of these other allegations and the testimony in the case, we do not think that the Circuit Judge was in error.

The defendants also moved the Court to withdraw from the consideration of the jury the specification of negligence charging a failure to stop the train after observing the automobile upon the railroad crossing.

The engineer testified that he applied the brakes just about the time he entered the street, when he was only four or five feet from the point of collision; and that at a speed of fifteen miles an hour the train was brought to a stop four car lengths and the length of the engine from the point of impact, or approximately two hundred ten feet past Washington Street. He also said that the stop was made about as quickly as was possible at that speed with a train of eighteen cars.

The employees of a railroad company have the right to assume, unless the contrary appears, that a person approaching the track is in possession of his faculties, and will use his senses of sight and hearing; and that he will stop in a place of safety. A railroad company is not required to slacken the speed of its train upon seeing a person approaching the

track, unless the circumstances indicate that he does not or cannot see the train. However, if it appears to the engineer that such a person is in a position of danger and does not see the train it may become the duty of the company in certain circumstances and in the exercise of due care to make all reasonable efforts to slacken speed or stop the train. *Mack v. South Bound Railroad Company*, 52 S. C., 323, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Fletcher v. South Carolina, etc., Railroad Company*, 57 S. C., 205, 35 S. E., 513; *Gosa v. Southern Railway Company*, 67 S. C., 347, 45 S. E., 810; *Lee v. Northwestern Railroad Company*, 89 S. C., 274, 71 S. E., 840; 52 C. J., 253.

In this case it was a question for the jury to say whether, or at what time, it became apparent to the engineer, or should have been discovered by him in the exercise of due care, that the occupants of the automobile did not see the train and were going upon the track. Although it is more than two hundred ten feet from Broad Street to Washington Street it may well be that the train could not have been brought to a full stop before reaching the crossing, after the plaintiff's peril was seen; but we think that it was a question for the jury to say whether, in keeping a proper lookout, and in moving at fifteen miles an hour, the engineer could with ordinary care, after discovering the plaintiff's danger, have applied the emergency brakes sooner than he did, and thus have checked the speed of the train in time to afford the driver of the automobile an opportunity to avoid a collision. This is not a question which may be decided as a matter of law, and we think that there was such testimony as justified the submission of this specification to the jury.

Other specifications charged negligence and willfulness in operating the train "in a careless and negligent manner and with a reckless and wanton disre-

gard of the safety of travelers"; in "failing to use the slightest care to avoid striking the automobile"; and "in operating the train through a thickly populated community and across a much-traveled street or highway, in the manner and under the conditions herein alleged." These were general allegations and apparently no motion was made before trial to have them made more definite and certain. We do not think that there was error in refusing to withdraw them from the jury.

Taking up finally the contention that the trial Judge should have granted a new trial *nisi* in an effort to reduce the amount of the verdict, it is true that the verdict of $20,000.00 is quite large indeed. We are unable, however, to say that there has been an abuse of discretion on the part of the trial Judge.

The plaintiff was in good health and about twenty-eight years of age at the time of the collision. Because of his injury he was out of work for about six months. His automobile which was worth about $500.00, was destroyed, and in addition to other medical expenses his hospital bill was $688.50. The year in which he was injured he lost about $750.00 on his farm because of inability to operate it.

He suffered serious and painful injuries. He had bruises over his entire body and a six-inch laceration on his skull. His left thigh bone was broken three inches above his knee. His knee cap was fractured. He was in a state of coma for eight or nine days. He suffered much pain, and sustained a severe brain injury. He stayed .in the hospital fifty-two days with a forty-pound weight attached to his leg. When discharged his left leg remained in a cast from the toes to the lower part of the chest for two and a half months.

The brain injury causes headaches and the medical testimony is that it will be more or less permanent. He has stiffness in his knee so that he cannot bend it fully. The leg injuries are of a permanent nature.

We do not think that the verdict is so excessive as to warrant the conclusion that it was the result of caprice, passion or prejudice, or of other considerations not founded in the evidence.

All of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and MR. CIRCUIT JUDGE T. S. SEASE, ACTING ASSOCIATE JUSTICE, concur.