16467

JONES v. ATLANTA-CHARLOTTE AIR LINE R. CO. *ET AL.*
(63 S. E. (2d) 476)

538

*Messrs. Frank G. Tompkins, Jr.,* of Columbia, and *P. A. Bonham,* of Greenville, *for Appellants,*

*Mr. J. Robert Martin,* of Greenville, *for Respondent,*

Messrs. *Frank G. Tompkins, Jr.,* of Columbia, and *P. A. Bonham,* of Greenville, *for Appellants, in Reply,*

February 15, 1951.

STUKES, Justice.

This appeal is from verdict and judgment for $5,000.00 actual damages for wrongful death. Sections 411, 412, Code of 1942. The twenty-nine year old deceased was an unmarried son of a widowed mother with younger children in whose support he aided by his earnings as a truck driver. He left his mother's home late on the Sunday afternoon of March 7, 1948, and was struck and killed by a fast passenger train at a little after eleven o'clock that night. The accident occurred in a populated and partly industrial area just south of the city of Greenville. There was evidence that he was in the company of a woman and another, unidentified, man, who with two others, who testified for plaintiff, purchased and

all drank whiskey on or about the railroad tracks where there were paths in frequent use by the public. Further statement of the facts may·be shortened by quotation from the reply brief of appellants, as follows: "Appellants agree that in so far as the facts concern the relationship of the plaintiff's intestate to the defendants on the question of licensee or trespasser, there is no dispute as to these facts. The uncontradicted evidence showed that there were well defined paths leading down to and along defendant's tracks, and that for more than twenty years the public at large had been accustomed to use these paths for pedestrian purposes, with the acquiescence of the defendants. Therefore there was no dispute as to the fact that persons so using the paths were licensees. The uncontradicted evidence also showed that plaintiff's intestate, being overcome by liquor was in a helpless condition on defendants'. track. It was likewise shown by the uncontradicted evidence that plaintiff's intestate was sitting in a stooped over position on a cross tie of defendants' track. There was no dispute about the facts but there was plenty of dispute about the law."

The quoted concessions are of importance because motions for nonsuit and directed verdict were made by appellants upon the contention that under the evidence the deceased was a trespasser upon the tracks, issue concerning which was submitted to the jury by the trial court after refusal of the motions. Further important significance will be noted by reference to the discussion of appellants' exception XV, toward the end of this opinion. It plainly appears that the verdict followed from the conclusion of the jury that deceased was a licensee rather than a trespasser, and this after additional instructions which were requested by them. The present pertinent admission by appellants is entirely proper in view of the relevant evidence, which on that account need not be stated.

The complaint was usual in form in such cases and alleged negligence, recklessness and wantonness in the rate of speed

of the train, in failure to give adequate warnings of approach, failure to keep proper lookout to discover the deceased helpless upon the track and failure of warning after discovery of him or after he could have been discovered by the trainmen. The answer was also usual in form with denials and plea of contributory negligence, recklessness and wantonness on the part of the deceased which was particularized in much detail, including failure to use his senses to ascertain the approaching train, in becoming drunk upon the track at night, and that he was a trespasser there.

The locomotive was a modern Diesel type with full view of the track ahead (as from an automobile) and was equipped with an efficient headlight and also a Mars light which revolves or oscillates so as to cast its beams to right and left of the train's approach which also occasionally coincide with the beams of the headlight. No warning signals were given after passing a public grade crossing 1025 feet straightaway and upgrade to the place of the accident. In all, the track was straight for over 3600 feet. The engineer and fireman testified that they were keeping a lookout and about 600 or 700 feet away first saw an object on the track which they took to be paper or cardboard. (This is reminiscent of *Mason v. Southern Ry Co., infra,* where a child was mistaken for a dog or chicken.) They gave no signals and did not slacken speed. When they determined, apparently simultaneously from their testimony although there seems to have been no communication between them, that there were people on the track, which was at a distance of about 200 feet, the emergency brakes were applied, still no signals given, and the train was stopped after the last of eight cars 80 feet long had passed the scene by two or three car lengths. The crewmen testified that the speed was from 55 to 60 miles per hour. The engineer entered the railway service in the year 1902 and was retired in 1949. He long wore bifocal eyeglasses and appears from the record to have been unable to read from the witness stand a printed sign in the court room. It is impossible for this court to appraise the last stated fact but it

may have been of significance to the jury. They viewed the scene of the accident as a part of the evidence. Photographs and a map of it were also introduced. No one estimated in evidence the distance required to stop the train in emergency. The engineer said it could not have been done in the distance after he first saw the deceased and his companion, which is quite indefinite in view of the other evidence. It appears that the fireman had said at the inquest 600 or 700 feet, but at the trial he could not remember that and disclaimed knowledge. Part of his duty was to aid the engineer in keeping a lookout but it is clear that on this occasion he was of no help.

Reference is made above to the testimony of the engineer and fireman that each, apparently independently but at the same time, first saw on the track what turned out to be two people at a distance from the latter of about 600 or 700 feet, mistaken then they say for paper or cardboard. But it appears that such estimate was based on the distance from the grade crossing which in fact and by survey in evidence was 1025 feet. The fireman was putting on his coat or jacket and apparently did nothing and said nothing to the engineer.

There was an applicable rule of the operating company to the effect that engine crewmen must keep a constant and vigilant lookout for pedestrians or obstructions on the track, and seeing such must immediately reduce the speed and be assured that the track is clear before proceeding, and also give reasonable warning when persons or cattle are on the track in order to avoid running them down. We think it may be fairly held that there was substantial question of fact whether there was violation of this rule. Evidence hereabout was received without objection.

The alarm signal, or cattle alarm, was described by the company witnesses as a succession of short blasts of the whistle; and the latter was described as loud and easily heard. Who can say that it may not be reasonably concluded that the timely sounding of it would have aroused

the deceased and alerted him to his danger? This difficult question was also one of fact for the jury.

The respondent produced witnesses who live in the neighborhood and had seen trains like this travel at night and gave their estimates and opinions as to how far and what objects on the track may be seen by aid of the locomotive headlight and Mars light, which conflicted with similar testimony of the crewmen and made sharp issue thereabout. Regardless, however of this contradiction in the testimony, that of the interested crewmen need not have been accepted by the jury if they did not believe it; they were the judges of the credibility of the witnesses and of the weight of the evidence. Moreover, the nature of the factual feature of the appeal necessitates that the court view the evidence and reasonable inferences therefrom most favorably to respondent. As counsel frankly say in effect in the above quotation from the brief, the appeal is concerned more with law than with facts.

The burden of it is the effort of appellants to persuade the court to overrule the following former decisions: *Sentill v. Southern Ry. Co.,* 70 S. C. 183, 49 S. E. 215; *Craig v. Augusta-Aiken Ry. Co.,* 89 S. C. 161, 71 S. E. 983, 985; *Kirkland v. Augusta-Aiken Ry. Electric Co.,* 97 S. C. 61, 81 S. E. 306; *Webb v. Atlantic Coast Line Ry. Co.,* 105 S. C. 300, 89 S. E. 546; and *Hayes v. Atlantic Coast Line Ry. Co.,* 196 S. C. 386, 13 S. E. (2d) 921. The last of these, the *Hayes case,* was cited and quoted with approval in *Nettles v. Southern Ry. Co.,* 211 S. C. 187, 44 S. E. (2d) 321, which is itself a pertinent and valuable authority here. Petition for review and reversal of the listed cases was duly filed pursuant to court rule 8, sec. 10. It might well have also included the following (and possibly others) which are of the same tenor and effect: *Mack v. South Bound R. Co.,* 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679; *Mason v. Southern Ry. Co.,* 58 S. C. 70, 36 S. E. 440, 53 L. R. A. 1913, 79 Am. St. Rep. 826; *Wilson v. Southern Ry.,* 93 S. C. 17,

75 S. E. 1014; *Sharpe v. Southern Ry. Co.*, 125 S. C. 478, 119 S. E. 245; *Key v. Charleston & W. C. Ry. Co.*, 144 S. C. 164, 142 S. E. 336; and *Leppard v. Southern Ry. Co.*, 174 S. C. 237, 177 S. E. 129.

In somewhat irregular order at this point and therefore parenthetically, the following is quoted from the leading *Mason case, supra,* 58 S. C at pages 80, 81, 36 S. E. at page 444: "Even conceding that a railroad company is not bound, as a general proposition, to look out for trespassers upon its track, it nevertheless is bound to exercise ordinary care in running its trains. The law imposes upon it the duty of keeping a reasonable lookout for obstructions on its track. The safety of its passengers and the rights of the public generally demand the enforcement of this rule. It is a general rule of law that a railroad company is liable in damages for an injury inflicted by it, when its negligence was the direct and proximate cause of the injury. If the direct and proximate cause of the infant's death was negligence of the defendant in failing to keep a reasonable lookout, and to discover the child in time to have prevented the injury, it is as much liable in damages as if the proximate cause of the injury had been its negligence after discovering the child upon its track. (Citations.)" The likening of a drunken man to a baby is proverbial.

Appellants' principal contention with respect to the cited cases follows the reasoning of the dissenting opinion in the *Hayes case,* 196 S. C. at pages 398, 399, 13 S. E. (2d) at page 926 and is to the effect that a licensee on footpaths about a railroad track is of that status only so long as he is erect; sitting or prone he is a trespasser. Such contention has been repeatedly rejected in the past as is seen by reference to the foregoing decisions. It overlooks the effect of the license and practice of people to use the paths, which gives reason and warning to train operators to expect people there, whether walking or prostrate for one reason or another.

The main brief of appellants contains a collection of cases from other jurisdictions which are in conflict with our long established rule. Others similar may be found in the annotations hereinafter cited. This court and others have refused to follow them. It was said by the majority in the *Hayes case, supra,* 196 S. C. at page 391, 13 S. E. (2d) at page 923, as follows: "A review of the foregoing cases, and many others, shows that our Court, along with a majority of the Courts of other jurisdictions, has adopted what might be termed a liberal view, to the effect that a railroad does or may owe a duty to anticipate the presence of persons along or crossing its tracks at a well-defined pathway at a place in which it has acquiesced in a somewhat general use thereof (not amounting to a legally established public use), or where the circumstances have been such that the presence of persons on or along the tracks at that particular place may reasonably be expected."

It is ventured to say that no rule is firmer fixed in the law of this State than that which appellants would overturn. It was evolved early after the operation of railroads began and before formulation of the comparatively modern doctrine of "last clear chance" in negligence cases. However, the facts of our former decisions which are under attack appear to come within that now generally accepted rule. It was fully explored and followed in *Seay v. Southern Ry.,* 205 S. C. 162, 31 S. E. (2d) 133, and also discussed in *Nettles v. Southern Ry. Co., supra,* 211 S. C. 187, 44 S. E. (2d) 321, and *Scott v. Greenville Pharmacy,* 212 S. C. 485, 48 S. E. (2d) 324, 11 A. L. R. (2d) 745. That our older cases which involved facts similar to those in the instant case might well have turned (with the same result) upon application of the rule of last clear chance is demonstrated by the similar cases from other jurisdictions which are collected in the annotation in 31 L. R. A., N. S., 1031, entitled, "Intoxication of persons on railroad track as affecting applicability of doctrine of last clear chance." In some of the foreign cases the rule has operated to permit recoveries by trespassers upon the

tracks which is further than the case in hand because here the long continued use of footpaths about the tracks author- ized the jury to find that the deceased was a licensee rather than a trespasser, and entitled to the exercise of due care on the part of the train crew to discover his presence and avoid injury. There is now no controversy of fact thereabout in the present case, as is shown by the quotation hereinabove from appellants' reply brief. Another name for the rule of last clear chance, which is sometimes used by other courts and by text writers, is "the doctrine of discovered peril," which is like- wise quite expressive, and accurate if extended to include constructive discovery, that is, discovery which would have resulted from diligence.

Extended treatment of the subject of last clear chance occurs in 38 Am. Jur. 900 *et seq.,* Negligence, Sec. 215 *et seq.,* and exhaustive annotations appear in 92 A. L. R. 47, 119 A. L. R. 1041 and 171 A. L. R. 365. The first of these is called a Comment Note, in which the editor classifies the many decisions. The case at bar, depending upon one's view of the evidence, falls within the first or third classification, there stated as follows: *First category*: danger actually dis- covered by defendant; injured person physically unable to escape. *Third category*: danger not actually discovered by defendant but ought to have been; injured person physically unable to escape. 92 A. L. R. 447. The supplemental anno- tations, which have been cited, preserve the defined catego- ries and classify the later cases accordingly. Many of them were railroad cases similar to that in hand and in some of them verdicts were affirmed in accord with our line of cases which appellants would overrule. Earlier railroad cases are reviewed in 31 L. R. A., N. S., 1031, *supra.*

The editor cites at 171 A. L. R. 398 in support of the doctrine of last clear chance A. L. I. Restatement, Torts, sec. 479. The following is from the Restatement, entitled, "De- fendant's last clear chance:"

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant

1. knows of the plaintiff's situation and realizes the helpless peril involved therein; or

2. knows of the plaintiff's situation and has reason to realize the peril involved therein; or

3. would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and

(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff.

Decisions in conformity with the foregoing hold that one is incapable of care if prostrate from intoxication or other cause, and within the rule if the other factors are present.

44 Am. Jur. 729, Railroads. Sec. 491, is, in opening part. as follows: "In general, the rule is that if the trainmen discover an intoxicated trespasser upon the track and realize, or in the exercise of proper care ought to realize, that he is helpless or insensible of danger, the company will be liable if he is injured, notwithstanding his contributory negligence in going or remaining upon the track. The conduct of the trainmen in some cases where the peril of the trespasser was actually discovered and realized approximates closely to wantonness or wilfullness, against which contributory negligence is, in any event, no defense." Again it is noted that the quoted text is applicable to trespassers while we are concerned here with facts which tended to show that the deceased was a licensee upon the tracks. Indeed, the fact is now conceded, which is conclusive.

Apparently overlooking *Seay v. Southern Ry., supra,* 205 S. C. 162, 31 S. E. (2d) 133, appellants mistakenly assert in the brief that the last clear chance rule is not of force in this State and cite therefor the earlier decisions of *Spillers v. Griffin,* 109 S. C. 78, 95 S. E. 133, L. R. A., 1918D, 1193 (annotated on another point), and *Blackwell v. First National Bank,* 185 S. C. 427, 194 S. E. 339. Insufficient facts are stated in the report of Spillers to determine whether the rule would have been applicable if considered. The action was reversed for new trial because of other erroneous instructions. The reference to last clear chance in it was quoted in the reported order of the trial court in the *Blackwell case;* the appeal was upon controversy with respect to the pleadings in an action for alleged wrongful payment of a bank check and the opinion of this court did not deal with the question. These cases are referred to by the annotator in 119 A. L. R. 1046. They cannot be accepted as authority on the point at issue in view of our recent subsequent decisions to which reference has been made. Our *Seay case, supra,* is noticed in the later annotation in 171 A. L. R., at page 376. There note is also taken of the well-considered case of *Melton v. Atlantic Coast Line R. Co.,* 206 S. C. 251, 27 S. E. (2d) 490, which shows by its result and citations that the principle of last clear chance is established in other fields of tort liability in this jurisdiction. It affirmed judgment for plaintiff in a crossing accident where negligence was alleged in the failure to stop the train after observing plaintiff, actually or constructively. The following is quoted from the opinion:

"However, if it appears to the engineer that such a person is in a position of danger and does not see the train it may become the duty of the company in certain circumstances and in the exercise of due care to make all reasonable efforts to slacken speed or stop the train. *Mack v. South Bound Railroad Company,* 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679, 69 Am. St. Rep. 913; *Fletcher v. South Carolina, etc., Railroad Company,* 57 S. C. 205, 35 S. E. 513; *Gosa v. South-*

*ern Railway Company*, 67 S. C. 347, 45 S. E. 810; *Lee v. Northwestern Railroad Company*, 89 S. C. 274, 71 S. E. 840; 52 C. J. 253. In this case it was a question for the jury to say whether, or at what time, it became apparent to the engineer, or should have been discovered by him in the exercise of due care, that the occupants of the automobile did not see the train and were going upon the track. Although it is more than two hundred ten feet from Broad Street to Washington Street it may well be that the train could not have been brought to a full stop before reaching the crossing after the peril was seen; but we think that it was a question for the jury to say whether, in keeping a proper lookout, and in moving at fifteen miles an hour, the engineer could with ordinary care, after discovering the plaintiff's danger, have applied the emergency brakes sooner than he did, and thus have checked the speed of the train in time to afford the driver of the automobile an opportunity to avoid a collision. This is not a question which may be decided as a matter of law, and we think that there was such testimony as justified the submission of this specification to the jury."

At first blush it may be startling that one may go upon a railroad track drunk or become so thereon and nevertheless be entitled to care from a train crew when his voluntary intoxication has incapacitated him to care for himself. But one insensible from voluntary drunkenness is after all not immediately substantially different from one unconscious because of innocent accident or illness. In both cases helpless human life is at stake. No doubt this consideration has moved this court and others to consistently hold that intoxication to the extent of helplessness interrupts the negligence of the victim so that subsequent negligence of a defendant brings into play the rule of last clear chance; or, in the thought and terminology of the *Seay case*, converts plaintiff's prior negligence into the remote, rather than the proximate cause of the injury.

This reexamination of the rule established and applied in our former decisions which appellants challenge leaves us in

no doubt of its soundness, under reason and authority. We adhere to it. However, we are mindful of the much faster speeds at which trains now run than when the early cases were decided (properly adverted to in the instructions to the jury in the trial of this case). This is made possible by improvements in trackage and locomotion and is necessitated by the competition of other means of rapid transportation. Doubtless brakes and headlights are also more efficient. These are matters of fact for consideration of the jury in the light of relevant and competent evidence and under appropriate instructions by the court. They properly enter into the measurement and testing by the jury of the conduct of the parties by the time-honored rule of average and reasonably prudent care. Ordinarily it is the function of the jury to determine such facts; and for the court only when the evidence is susceptible of but one reasonable inference, whether of due care or negligence.

What has been said by way of statement of the evidence and admissions and review of the applicable law demonstrates, we think, that the trial court did not err in refusing appellants' motions for nonsuit and directed verdict in their favor, and the exceptions thereabout are overruled. The remaining exceptions relating to the instructions to the jury, which were argued in appellants' brief, will be considered in the order there observed.

Exception VI relates to the following instruction to jury which was given per respondent's request at the end of the general charge: "I charge you that the law imposes upon the defendant railroad the duty of keeping a reasonable lookout for obstructions on its track, and if the direct and proximate cause of the death was the negligence of the defendant railroad in failing to keep a reasonable lookout and discover helpless person on its track in time to have prevented injury, it is as much liable in damages as if the proximate cause of the injury, had been its negligence after discovering such person upon its track." We find no error.

The law of it is consonant with our decisions. The specification of error answers itself in view of the forepart of this opinion, as follows: "The error being that said charge is contrary to the principle of law that the defendants owed no duty to keep a lookout for plaintiff's intestate if he was a trespasser, and the evidence is susceptible of no other reasonable inference than that plaintiff's intestate was a trespasser."

Exception IX complains of error in the following instruction, also given at respondent's request: "I charge you that 'A want of ordinary care may be said to contribute proximately to an injury when it is an active and efficient cause of the injury in any degree, however slight, and not the mere condition or occasion of it. But it is not a proximate cause of the injury when the negligence of the person inflicting it is a more immediate efficient cause. And so when the negligence of the person inflicting the injury would have discovered the carelessness of the person injured in time to avoid its effect and prevent injuring him, there is no contributory negligence because the fault of the injured party becomes remote in the chain of causation. In such a case, the want of ordinary care on the part of the injured person is held not a judicial cause; that is, a proximate cause, of his injury, but only a condition of its occurrence.' " Appellants' first criticism is that it is a statement of the law of last clear chance, which however we have seen is of force and was applicable to respondent's construction of the facts, which the verdict shows was accepted and found by the jury. It does not state the law of comparative negligence, which is appellants' other criticism. This comment is similarly applicable to exception X which was also made by appellants upon the now abandoned contention that the deceased may have been a trespasser on the tracks.

Exception XI was to the refusal of the court to charge in effect that a licensee on a walkway along the railroad track loses his status as such when he sits or lies on the track or walkway and is no longer entitled to

lookout on the part of the train crewmen who need then only not wilfully injure him after discovery upon the track, even if he is helpless. We know of no authority anywhere which upholds such a view. It is manifestly without merit.

Exceptions XII, XIII and XIV impute error in the refusal by the court to charge in accord with appellants' several requests which were to the effect that the drunken state of the deceased deprived him of all redress, which is not the law, as we have seen, and the proffered requests were rightly refused.

Exception XV is the last which was argued by appellants. After the jury had deliberated for about four hours they returned and asked to be instructed again as to the difference between a trespasser and a licensee. The court responded and in the course of the additional instructions had this to say: "If, however, the servants of the railroad Company should discover a trespasser upon the track, and should fail to observe due care under the circumstances to avoid running him down, this would be evidence from which a jury might infer that the injury was the result not of mere negligence but of the conscious failure to exercise due care or of willfulness or wantonness." The specifications of error relate to the reference to willfulness or wantonness, which has become academic in view of the restriction of the verdict to actual damages. Moreover, appellants now concede that the deceased was not a trespasser but a licensee.

Consideration of the instructions as a whole, which is of course always proper, is convincing that they contained no error which was prejudicial to appellants.

Accordingly, all exceptions are overruled and the judgment affirmed.

FISHBURNE, TAYLOR and OXNER, JJ., and L. D. LIDE, Acting Associate Justice, concur.