# Richmond

## Seaboard Air Line Railroad Company, a Corporation v. W. P. Crowder, Administrator of the Estate of A. B. Crowder, Deceased.

November 27, 1950.

Record No. 3686.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*Eppa Hunton, IV* and *W. Potter Sterne,* for the plaintiff in error.

*Morton G. Goode* and *D. Carleton Mayes,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action brought by the administrator of A. B. Crowder, deceased, against the Seaboard Air Line Railroad Company to recover damages for the alleged wrongful death of the plaintiff's intestate, who while an occupant of an automobile was struck and killed by a train operated by the Railroad Company at a highway crossing in the town of McKenney, in Dinwiddie county, Virginia. The

Railroad Company challenges the sufficiency of the evidence to sustain a verdict and judgment of $4,000 which were rendered against it. We shall refer to the parties as they appeared in the court below.

The single-track main line of the Railroad Company runs approximately north and south through the town and intersects at right angles State Highway No. 40. At the time of the collision the plaintiff's intestate was driving a Chevrolet coupe in an easterly direction along the highway. The passenger train, which consisted of a Diesel locomotive of three units and twelve cars, was proceeding northwardly.

The crossing is protected by an automatic electric warning device equipped with both blinker lights and bell, which commences to operate when the engine, or leading unit, of a train approaching from either direction reaches a point 2500 feet from the crossing, and continues to operate until the last unit of the train has proceeded for the same distance beyond the intersection. The evidence is undisputed that on the day of the accident the signal was in good condition and functioning properly.

As an automobile proceeding eastwardly along the highway approaches the crossing, the view of an occupant thereof to the right or the south, from which direction the train came, is obscured by an embankment and undergrowth until the car reaches a point approximately "twelve paces" from the nearest rail. From that point until the vehicle clears the crossing an occupant has an unobstructed view of the track to the right or the south for a distance of 1800 feet. Correspondingly, an occupant of the cab of the engine has a like clear and unobstructed view of the crossing for the same distance.

Going eastwardly the highway is slightly downgrade until it reaches the edge of the bed of the railroad. Then there is a slight upgrade due to the fact that the bed of the railroad has been elevated above the level of the highway. The same condition obtains along the eastern edge of the roadbed of the railroad track. As the result of this eleva-

tion of the bed of the railroad vehicles must proceed slowly in crossing the track.

One witness testified that the engine of his car had on one occasion "choked" while the vehicle was being driven over the crossing.

The railroad track runs through the center of McKenney, a village of about 500 inhabitants, and the evidence is that the crossing accommodates a considerable volume of traffic.

A. B. Crowder, the plaintiff's intestate, lived about two miles west of the town and was familiar with the crossing. He was sixty-seven years old and in "average" health. While he had given up his former occupation as a contractor and builder, he was an active man, did repair work on furniture, gardened, and attended to a number of beehives.

On the early morning of August 13, 1947, Mr. Crowder left his home for the purpose of going to a peach orchard which was some distance across the railroad track. He was driving his 1935 Chevrolet coupe and was accompanied by his eleven-year-old grandson, James Wilbur Brown, who was seated to his right and was the only other occupant of the car. Several witnesses saw the car approach the crossing and all agreed that it was proceeding slowly, at approximately five or six miles per hour. But from then on there is a sharp conflict in the evidence as to what occurred.

According to the testimony of the decedent's grandson, upon which admittedly the plaintiff's right to a recovery rests, the signal bell was not ringing as the car approached the track, but, as the boy said, "just about as we nearly got on the railroad it started ringing." The car continued onto the track and "stopped on the railroad." When the car stopped the boy, as he said, "looked up and saw the train," which was then "coming around that bend" to the right or the south. The boy opened the door, jumped out of the car, and ran across the track to the east. When, as he said, he had gotten "past the second tracks"—that is, a spur track which according to the evidence is approximately ninety feet to the east of the main railroad track—

the engine struck and demolished the automobile. Mr. Crowder was killed almost instantly.

According to the boy, neither he nor his grandfather called the attention of the other to the approaching train.

Several witnesses for the Railroad Company testified that before the automobile reached the railroad track the automatic signal had begun to function and give warning of the approach of the train by the ringing of a bell and the flashing of the blinker lights. These witnesses say that the automobile did not stop on the track but endeavored to cross at a slow rate of speed in front of the approaching train.

It is undisputed that a proper warning of the approach of the train was given by both whistle and bell.

The engineer testified that he saw the automobile approaching and thought that it would stop before going on the track; that when he realized that it was not going to stop, he put on the emergency brakes but did not have time to reduce the speed of the train before the collision.

The engineer further testified that as the train approached the crossing it was proceeding at seventy miles an hour, which was the usual speed at which he operated this and other passenger trains over the crossing. He said the rules and regulations of his company permitted the operation of the train at that speed through that vicinity.

A witness for the plaintiff estimated that the train approached the crossing at the even greater speed of from seventy-five to eighty miles per hour.

At any rate, at the speed at which it was proceeding, the train went approximately 3500 feet before it could be brought to a stop by the use of the emergency brakes. The enginer said that this was a "good emergency stop" for the speed at which the train was going.

The town had enacted no ordinance restricting the speed of trains within its limits. Nor are we concerned with the failure of the employees of the Railroad Company to comply with statutory requirements as to signals.

The determination of the sufficiency of the evidence to sustain the verdict and judgment turns upon the application of elementary principles. The doctrine of last clear chance was not invoked by the plaintiff below and the vital issues are, (1) was the Railroad Company guilty of negligence which was the proximate cause of decedent's death; and if so, (2) was the decedent free of contributory or concurring negligence?

The plaintiff contends that the evidence warrants a finding that the Railroad Company was guilty of negligence, in that it, (1) failed to construct and maintain the crossing in a reasonably safe condition; (2) failed to have the crossing equipped with adequate automatic signals which would give a traveler on the crossing a reasonable and timely warning of the approach of the train; (3) operated the train at an excessive rate of speed, considering the nature of the crossing and the surrounding circumstances; and that its negligence in either or all of these respects proximately caused the collision and Mr. Crowder's death.

The claim that the Railorad Company was negligent in the manner in which the crossing was constructed and maintained is predicated upon evidence that the bed of the railroad had recently been elevated above the level of the highway, and that this required a vehicle to proceed over the crossing at a reduced speed. The claim that the condition of the crossing was the proximate cause of the accident is based upon the theory that because of such condition the engine of the decedent's car stalled or choked and the vehicle stopped on the track.

The fatal weakness in this contention is that there is no evidence that the engine of the decedent's car stalled or choked on this occasion, or that the car stopped, because of the condition of the crossing. The only testimony on the subject comes from the decedent's young companion who merely stated that the car "stopped on the railroad." He gave no explanation as to why it came to a stop, nor did he say that the engine had failed.

The stopping may have been due to a mechanical defect in the car, or to the manner in which it was operated, causes for which the Railroad Company was in no wise responsible; or it may have been due to a condition of the crossing for which the Railroad Company was responsible. It is elementary that in action to recover damages for alleged negligence, where it appears that injury or death may have resulted from one of two causes, for one of which the defendant is liable, but not for the other, the plaintiff has failed to establish his case. *Chesapeake, etc., R. Co.* v. *Heath*, 103 Va. 64, 67, 48 S. E. 508; *Kenny Co.* v. *Dennis*, 167 Va. 417, 420, 189 S. E. 164, 165.

Next, as to the adequacy of the automatic signal. Although the undisputed evidence is that the automatic signal functioned properly on this occasion, the plaintiff argues that the jury had the right to find that this was not an adequate and timely warning, because, he says, the evidence on behalf of the Railroad Company shows that it regularly operates its trains at a speed of seventy miles per hour when approaching this crossing, and was so operating the train on this occasion, and that at that speed the train could not be brought to a stop within the range of 2500 feet, at which distance the signal gave the first warning of the approaching train.

The purpose of the automatic signal is, of course, to warn persons on or approaching the crossing of the coming train. It does not notify the operator of the train of the presence of a person or vehicle on the crossing, and is not designed for that purpose. Had the switch of the signal been located a sufficient distance from the crossing to enable the engineer to bring the train to a stop before reaching it, that of itself would not have prevented the collision. Not until the train had rounded the curve and come within 1800 feet of the crossing could the engineer or fireman have seen that the decedent's car was stopped on the crossing and in a position of danger.

There is no direct evidence that the switch which started

the automatic signal should have been located more than 2500 feet from the crossing, or that the crossing would have been less hazardous if this had been done. It is true that had the starting switch been located farther from the crossing the plaintiff's intestate might have been warned of the approaching train before he went on the track, or would have had a few added seconds within which to have gotten off the track. But, as we shall presently see, the signal as now installed and operated gave the decedent warning in ample time for him to have removed himself from danger.

■ Clearly, then, the failure of the Railroad Company to locate the signal switch farther from the crossing was not a proximate cause of the collision.

The plaintiff's main contention is that the evidence warrants the finding that the train was being operated at an excessive rate of speed under all of the circumstances and that this was a proximate cause of the accident. He concedes that in the absence of legislative restriction the mere speed of the train, from seventy to eighty miles per hour, was not negligence *per se*. His argument is that the Railroad Company was under a common-law duty to operate its train at such rate of speed as was reasonable under the circumstances, and that it was for the jury to say whether the speed was excessive, taking into consideration the fact that the approach to the crossing was partly obscured, that the crossing was frequently used, was not in good condition, and was visible to the operator of the northbound train for a distance of only 1800 feet, within which distance the train could not be brought to a stop.

■ While the matter is by no means free from doubt, we may assume that the jury was warranted in finding that under the circumstances the train was being operated at an excessive and negligent rate of speed; but that, of course, will not support a recovery here, unless it further appears from the evidence that such excessive speed was a proximate cause of the death of the decedent, and that the decedent

was free of contributory negligence. See *Southern Ry. Co.* v. *Hansbrough*, 107 Va. 733, 742, 60 S. E. 58; *Morgan* v. *Atlantic Coast Line R. Co.*, 136 Va. 394, 397, 398, 118 S. E. 233; *Chesapeake, etc., R. Co.* v. *Meyer*, 150 Va. 656, 665, 143 S. E. 478.

We are of opinion that the evidence fails to show the necessary causal connection between the speed of the train and the death of Mr. Crowder. At the highest estimated speed of eighty miles per hour, the train covered approximately 120 feet per second. Thus, about twenty seconds elapsed between the time the automatic signal first gave warning of the approach of the train and the time it reached the crossing. There is no evidence that this was an insufficient time for a vehicle or pedestrian to pass safely over the single-track main line. Even at a reduced speed of from five or six miles per hour, it would have required only two seconds for a vehicle to cross the track.

The operation of the automatic signal is an added proclamation of danger to a person on the track and the engineer has the right to assume that upon this warning such person will remove himself from his perilous position.

In the present case, not until the engine rounded the curve and came within 1800 feet of the crossing could the engineer see that he was to be confronted by the unusual situation of an automobile standing on the track.

There is nothing in the evidence to show that the situation would have been different had the train been proceeding at a lower rate of speed. While a reduced speed would, of course, have given the operator of the car more time within which to pass safely over the track, that is beside the point here. According to the plaintiff's theory this is not the usual case of a collision between a moving train and a moving automobile, which frequently involves the question as to whether the motorist has a sufficient time to cross in front of the approaching train. Here the collision did not occur because the speed of the train did not allow the plaintiff's intestate a sufficient time to clear the track. It

occurred because the automobile came to a stop on the track and remained there until the moment of the impact. This and not the speed of the train was the sole proximate cause of the collision.

We are further of opinion that in failing to remove himself from the place of danger, after the car stopped on the track, the plaintiff's intestate was guilty of negligence which was a proximate cause of his death.

We do not have here a situation where the operator of an automobile chooses unwisely between the duty to remove himself from a position of peril and the obligation to save his or another's property from destruction, or one in which the driver tries in vain to avoid possible disaster for those on a train by removing his vehicle from its path. In such cases it is usually for the jury to say whether, in the commendable effort to remove the automobile from the track, the operator has "stayed by his ship" too long. See *Horsley* v. *Chesapeake, etc., Ry. Co., ante,* p. 628, 61 S. E. (2d) 868.

Here, so far as the evidence shows, the attention of the plaintiff's intestate was not diverted from impending disaster by an effort to start the car and get it off the track. His only concern was to remove himself from imminent peril. And, while in such position of extreme danger decedent's conduct is to be judged by what a normally prudent person would have done under such or similar circumstances, fairminded men must agree, we think, that he did not act with reasonable promptness in trying to get out of his position of obvious and imminent peril.

Admittedly the decedent was apprised by the automatic signal of the approach of the train when it was 2500 feet away. Although he was in "average" health, lived in the vicinity, used the crossing frequently and must have known that trains passed there at high rates of speed, he made no effort to get out of danger. The weather was clear and the visibility was good, and yet he continued to sit in the car on the track after the train came into view 1800 feet, or more than a third of a mile, away. Both his senses of

sight and hearing should have warned him of the imminent and impending danger  He had the further and added warning when his small companion opened the door, jumped out of the car and ran to a place of safety.

That the decedent had ample time within which to save himself is demonstrated by the fact that his companion, after seeing the train, had sufficient time to get out of the car and run a distance of ninety feet before the collision. It was not necessary that the decedent should have gone that far.  A distance of a few feet would have placed him in a position of safety, and this he could have accomplished almost instantaneously after he had gotten out of the car. There is not one word of evidence to indicate that he made any effort whatsoever to extricate himself from his obvious position of peril.

In this situation it is clear that the decedent's own negligence proximately contributed to his death, and hence his personal representative cannot prevail in the present action.

The judgment is reversed, the verdict set aside, and a final judgment will be here entered in favor of the defendant Railroad Company.

*Reversed and final judgment.*