## 17519

Mrs. Lois BRAMLETT and Troy Campbell, as Administrators of the Estate of Samuel Campbell, Appellants, v. SOUTHERN RAILWAY COMPANY, Respondent

(108 S. E. (2d) 91)

*Messrs. J. Allen Lambright, Sumter B. Sams* and *J. Wright Nash,* of Spartanburg, *for Appellants, on re-hearing,*

*Messrs. Frank G. Tompkins, Jr.,* of Columbia, and *Sam R. Watt,* of Spartanburg, *for Respondent, on re-hearing,*

April 2, 1959.

OXNER, Justice.

This case was argued during the May, 1958 term of this Court. On July 28, 1958 an opinion was filed affirming the judgment rendered by the Court below. Subsequently a petition for a rehearing was granted and the case reargued at the March, 1959 term. This opinion will be substituted for the opinion heretofore filed.

This action was brought against the Southern Railway Company to recover damages for the alleged wrongful death of Samuel Campbell who was instantly killed when his automobile was struck by passenger train No. 29 at the Line

Street Crossing in the Town of Greer, South Carolina, at approximately 12:55 P. M. on October 28, 1955. On the trial of the case, timely motions were made by the Railroad Company for a nonsuit and a directed verdict upon the grounds (1) that there was no proof of actionable negligence on the part of the Railroad Company, and (2) that the uncontradicted evidence established gross contributory negligence and recklessness on the part of the decedent. These motions were refused and the case submitted to the jury resulting in a verdict in favor of the plaintiffs for $12,500.00 actual damages. Thereafter the trial Judge granted a motion by the Railroad Company for judgment *non obstante veredicto* upon the ground that the only reasonable inference warranted by the testimony was "that the plaintiffs' intestate failed to use slight care for his own safety and that such failure to use slight care was at least a contributing proximate cause of the injury and resulting death." From this order, the plaintiffs have appealed.

■ Line Street constitutes a link in the principal highway between Greer and Woodruff. It runs approximately north and south and intersects at right angles five tracks of the Southern Railroad in the Town of Greer— three spur tracks and two mainline tracks. (The latter are referred to in the record as the north and southbound tracks. We shall follow this designation although in the Town of Greer the railroad runs in an easterly-westerly direction). The decedent, driving a 1953 Mercury automobile, approached the crossing from the south. After crossing a spur track and the so-called northbound track, his car stopped on the southbound track and before he was able to extricate himself the car was truck by a passenger train consisting of a diesel locomotive of two units and eleven cars. The automobile was pushed a distance of approximately 150 feet before being thrown to one side of the track and when examined, the decedent was found pinned under the front of it. The train traveled an additional 150 feet before stopping.

Running along the southern side of the railroad right of way perpendicularly east from Line Street is a street known

as Moore Street. At the time of the accident there was a hedge 6 or 7 feet high running along the southern side of Moore Street as it extended east from Line Street. This hedge was approximately 50 feet from the point where the collision occurred. On the western side of Line Street near the spur track, the Railroad Company installed blinker signals. The testimony shows that the blinker lights commence to operate when the engine or leading unit of a train reaches a point 1,537 feet from the crossing and continue to operate until the train passes over the crossing. There was a similar blinker light on the other side of the crossing. As the decedent approached this crossing from the south, he passed the blinker signals, crossed Moore Street, the spur track, and the northbound track and was on the southbound track when struck. After passing the hedge which as previously pointed out was 50 feet from the southbound track, there was nothing to obstruct decedent's view to the right, the direction from which the train was approaching, for approximately a mile except a row of utility poles 26 feet from the southbound track.

The evidence does not disclose why the decedent's car stopped on the crossing or how long it remained there before the accident. A witness offered by plaintiffs testified that as she approached this crossing from the north, the opposite direction from which decedent was traveling, she heard the bell ringing and whistle blowing, saw the signal lights blinking, and stopped; that she then saw a car on the track; that "there was a man in the car * * * moving about, but I couldn't tell what he was doing"; that "the door came open on the driver's side and he got out on the ground, on the track, and took a leap to run"; and that about that time the train hit the car. She said she "really didn't see the train until it hit because I was watching the man."

The engineer and fireman said that they had been signalled to stop at Greer to let some passengers off and approached this crossing traveling between 20 and 25 miles an hour. The engineer testified that he saw a car approaching from

his left and thought it was going to stop but that when the engine was 30 or 40 feet from the crossing, the car went on the track and stopped, whereupon he applied his brakes but was unable to avoid the accident. The fireman testified that he first noticed this car just before it reached the northbound track; that it was moving very slowly and he thought it was going to stop but when it was about 13 feet from the southbound track and the train "two or three engine lengths from the crossing," the car kept moving and he called the impending danger to the attention of the engineer who then gave the distress signals and applied the brakes, but was unable to stop.

There is no claim of failure to give the statutory signals. The undisputed evidence shows that the flashing lights at the crossing were functioning properly. It is alleged in the complaint that the defendant failed to construct and maintain the crossing in a reasonably safe condition. The only evidence in support of this allegation is to the effect that on account of the curve, there is a difference of four or five inches in the elevation of the mainline tracks which would cause a car to bounce unless it was proceeding slowly. The plaintiffs' own witnesses testified that otherwise it was a good crossing; that it was "smooth"; and that the elevation was a gradual one. There is no evidence that the "banking" of the rails was unnecessary or not in accord with good engineering practice. Moreover, there is no evidence that the car stopped or stalled because of the condition of the crossing. In fact, there is no explanation as to why it came to a stop. The stopping may have been due to a mechanical defect in the car, or to the manner in which it was operated, or to other causes for which the Railroad Company would be in no wise responsible.

It is further alleged that the train was going at an excessive and unlawful rate of speed. It appears that the maximum speed permitted by the ordinance of the Town of Greer is 25 miles an hour. The only witness on this issue offered by the plaintiffs estimated the speed of the train at 55 or 60

miles an hour but on cross examination he conceded that this estimate was a mere guess and that the train "could have been going less, and it could have been going more." There is testimony that the train was running two hours late but none that there was any effort to make up the lost time.

We think it is clear that plaintiffs' intestate was guilty of gross contributory negligence and recklessness as a matter of law. He was 32 years of age and in good health. Although he had been in the Air Force for twelve or fourteen years, his home was at Greer, he had traveled over this crossing many times and was thoroughly familiar with it. The accident occurred on a clear day. If the train was in close proximity to the crossing when decedent approached it, as it must have been according to the testimony of the fireman and engineer, he could have heard the whistle and the bell if he had listened. He could have seen the signal lights flashing if he had looked. After he passed the hedge, a distance of 50 feet from the place of the accident, there was nothing to obstruct his view down the tracks to the right for approximately a mile except a line of utility poles, parallel to the track, which would only constitute a momentary obstruction. There was nothing to distract his attention. Under these circumstances if he attempted to enter the crossing in front of an approaching train, he was guilty of gross contributory negligence and recklessness as a matter of law. *Robinson v. Atlantic Coast Line Railroad Company,* 179 S. C. 493, 184 S. E. 96; *Moore v. Atlantic Coast Line Railroad Company,* 192 S. C. 406, 7 S. E. (2d) 4.

The theory of the plaintiffs seems to be that the train was not in close proximity when their intestate approached the crossing. They allege in their complaint that when he attempted to drive across said crossing, his car stalled and "that while so stalled, his car being visible to the defendant's agents and servants for approximately one-half mile, a certain passenger train No. 29, owned and operated by the defendant, its agents and servants, traveling west at a high and

unlawful rate of speed; and that plaintiff's intestate was all this time attempting to get his car started and did finally jump out of his car and started running away, nevertheless because of the high rate of speed of defendant's train, he was unable to sufficiently get out of danger and that as a result the defendant's passenger train ran into plaintiffs' intestate automobile, * * *." It is then alleged that the employees of the Railroad were negligent and wilful "in failing to have the said train under proper control so as to enable them to stop the same or slow down sufficiently to allow plaintiffs' intestate to get clear of the said right of way, when they saw or should have seen his automobile stalled upon the tracks, and the plaintiffs' intestate seeking to escape."

We find no evidence whatsoever to sustain the allegation in the complaint that the train was approximately half a mile from the crossing when the car stopped on the tracks. Moreover, if that were the case, decedent would have had ample time to get out of the car and off the tracks. His failure to do so would be gross contributory negligence and recklessness. *Truett v. Atlantic Coast Line Railroad Co.,* 206 S. C. 144, 33 S. E. (2d) 396.

Plaintiffs also invoke the doctrine of last clear chance. They say that even if their intestate was negligent in being on the track, the employees of the Railroad in the exercise of reasonable vigilance should have discovered his perilous position in time to avoid injuring him. The Court below held that this doctrine was not applicable because (1) it was not properly pleaded, and (2) there was no evidence to sustain it. We need not pass upon the sufficiency of the pleading for it is clear that there was no evidence reasonably warranting a conclusion that the defendant had the last clear chance to avoid injuring plaintiffs' intestate.

Upon seeing the car approaching the crossing, the engineer and fireman had a right to assume that the driver was in possession of his faculties and would

stop in a position of safety. *Melton v. Atlantic Coast Line Railroad Co.,* 206 S. C. 251, 27 S. E. (2d) 490. Assuming after the car stopped on the track decedent was in a helpless situation, there is no evidence that either the engineer or fireman was, or in the exercise of ordinary care should have been, aware of his plight in time to avoid injuring him. According to the testimony of the fireman who apparently saw the car before the engineer, there was no appearance of danger until the engine was between 120 and 180 feet of the crossing, at which time the car was about 13 feet from the crossing. There is no testimony that the train could have been stopped within this distance. In fact, the undisputed testimony is that the stop made by the engineer was a good one. It is true that plaintiffs' witness who stopped on the opposite side of the crossing said she saw a man in the car "moving about" and that he then "leaped out on the ground." But, as previously pointed out, this witness did not undertake to fix the position of the train when this took place. She did not see the train until the moment of the impact. In short, the plaintiffs have failed to produce any evidence that the car was on the track a sufficient length of time to have afforded those in charge of the train an opportunity to have seen it in time to avoid the injury. Assuming that the train was traveling at a rate in excess of the maximum limit permitted by the ordinance, there is no evidence that if it had been traveling within that limit the tragedy would not have occurred.

The following language of the Court in *Seaboard Airline Railway Co. v. Crowder,* 191 Va. 635, 62 S. E. (2d) 227, 232, is pertinent:

"There is nothing in the evidence to show that the situation would have been different had the train been proceeding at a lower rate of speed. While a reduced speed would, of course, have given the operator of the car more time within which to pass safely over the track, that is beside the point here. According to the plaintiff's theory this is not the usual case of a collision between a moving train and a moving

automobile, which frequently involves the question as to whether the motorist has a sufficient time to cross in front of the approaching train. Here the collision did not occur because the speed of the train did not allow the plaintiff's intestate a sufficient time to clear the track. It occurred because the automobile came to a stop on the track and remained there until the moment of the impact."

In view of our conclusion that the decedent in the instant case was guilty of gross negligence and recklessness as a matter of law, we need not consider plaintiffs' request that we overrule our cases holding that where recklessness or wilfulness is alleged and punitive damages sought, a verdict for only actual damages negatives a finding of recklessness or wilfulness, thereby rendering contributory negligence a complete defense in considering a later motion by a defendant for judgment *non obstante veredicto*. Nor are we now called upon to consider the attack made by plaintiffs upon the soundness of the rule in this State that upon proper allegation and proof of injury or damage as a result of a reckless or wilful act, the injured party is entitled to punitive damages as a matter of right.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.