**W. H. GRAHAM, Plaintiff,**

v.

**SEABOARD AIR LINE RAILROAD COM-
.PANY, a Corporation, Defendant.**

**Civ. A. No. 8099.**

United States District Court
D. South Carolina,
Florence Division.

Feb. 2, 1966.

H. E. Yarborough, Jr., John L. Nettles, Florence, S. C., O. A. Rankin, Conway, S. C., for plaintiff.

M. C. Woods, Jr., S. C., Marion, T. Dudley Paulling, Darlington, S. C., for defendant.

SIMONS, District Judge.

In this action plaintiff seeks to recover for personal injuries to himself and damages to his automobile alleged to have resulted from a crossing collision in Mullins, South Carolina, at about 6:50 p. m. on January 8, 1963. In his complaint plaintiff alleges several specifications of negligence, heedlessness and recklessness on the part of the defendant, to wit: Speed of the train, failure to warn of the approach of the train, failure to keep a proper lookout, failure to reduce the speed of the train or to apply the brakes in time to avoid the collision, failure to observe the plaintiff's perilous condition in time to avoid the collision, and lack of control of the train. In its answer defendant generally denies the material allegations of plaintiff's complaint; and also pleads contributory negligence, gross negligence, recklessness, wilfulness and wantonness on the part of the plaintiff.

The case was tried before the court without a jury at the December 1965 term at Florence, South Carolina. From the evidence I make the following findings of fact and conclusions of law:

### FINDINGS OF FACT

The single track main line of defendant runs generally north and south through the City of Mullins, South Carolina, and intersects at right angles U. S. Highway No. 76, also known as McIntyre Street. The automatic electric blinker lights, which were maintained at this crossing by defendant, were functioning properly at the time of the collision. The right-of-way of McIntyre Street is 60 feet wide and defendant's right-of-way is 30 feet wide. McIntyre Street is intersected by Gapway Road 324 feet east of the crossing. Both of these streets are paved. In the northwest corner of the intersection of McIntyre Street and Gapway Road there is located a small, one-story service station. Nearer the crossing there is a tobacco barn, which is located 38 feet north of McIntyre Street and 47½ feet east of the railroad track. At the time of the accident there were no structures of any kind between the service station and the tobacco barn. Subsequent to the accident in question a tire rack and a telephone booth have been installed just west of the service station. At a point 1300 feet north of the center of McIntyre Street defendant's track begins a curve to the west. At the crossing where the collision occurred plaintiff had an unobstructed view in a northerly direction along the railroad track for 1600 feet.

The point at which the lead unit of a southbound train makes contact and activates the automatic electric blinker lights at the subject crossing is 1990 feet north of the crossing.

Plaintiff lived in Mullins at that time, was employed as an insurance salesman, and was thoroughly familiar with the crossing and the approaches thereto.

On the night in question plaintiff, who ate supper at a friend's home situated at the corner of Gapway Road and Lowman Street in Mullins, proceeded about 6:45 p.m. to take Gladys Bowens, his friend's maid to her home. He was driving his 1961 Ford Sedan with five other occupants therein. His sister, Mrs. Sallie Strickland, was in the middle front and her son, Laverne Gibson, was seated on the right front. The maid was in the left rear seat, Jerry Lewis was in the middle rear and his sister's other son, James E. Gibson, was seated on the right rear. As he left his friend's home, he drove in a southerly direction along Gapway Road to its intersection with McIntyre Street. He turned right on McIntyre and headed westerly toward defendant's track crossing. The night was dark and the weather was cold. As he proceeded along McIntyre Street, defendant's freight train #71 made up of 3 engines and 78 cars, having a gross load of 4,661 tons, equipped with a double beam headlight, was approaching the McIntyre Street crossing at a speed of from 20–25 miles per hour, traveling in a southerly direction. After plaintiff had traveled by the filling station located at the northwest corner of Gapway Road and McIntyre Street, there were no obstructions to his right except the small tobacco barn; the oncoming train, with its headlight burning, its bell ringing, and its whistle blowing in accordance with the crossing statute, Section 58–743 of 1962 Code of Laws of South Carolina,[1] was in clear and open view of plaintiff and his passengers, if it were within 1600 feet of the crossing at that time. The red flashing lights and automatic bells on both sides of the McIntyre Street crossing were in operation and in full view and hearing of plaintiff as he approached the railroad track, the same having been activated and set in operation by defendant's train when its lead unit reached a point 1990 feet north of said crossing.

At 25 m. p. h. the train was traveling 37 feet per second, requiring almost 54 seconds to cover the 1990 feet after automatic crossing signals were activated before the train reached the crossing, during which time said signals were in continuous operation. If plaintiff were traveling at the same speed, it took him less than 9 seconds to travel the 324 feet from the intersection of Gapway Road and McIntyre Street to the railroad crossing; consequently the said crossing signals were in operation about 45 seconds before he turned into McIntyre Street and headed along a straight and level stretch of roadway toward the crossing. Even if the train had been traveling at 50 m. p. h., the maximum estimated by plaintiff's own witnesses, the automatic crossing signals were operative for at least 31 seconds before the collision.

When plaintiff proceeded near the crossing without making an apparent effort to stop his car, one of his passengers warned him of the approaching train. Nevertheless, he drove his automobile upon defendant's tracks where it stalled or was stopped.

At this point the train was approaching dangerously close to the car. All of the occupants including plaintiff hurriedly abandoned the automobile, and everyone but plaintiff reached a point of safety before the collision. For some un-

---

1. "§ 58–743. *Signals to be given at crossings.*—A bell of at least thirty pounds' weight and a steam or air whistle shall be placed on each locomotive engine or interurban car and such bell shall be rung or such whistle sounded by the engineer, fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway, street or traveled place and be kept ringing or whistling until the engine or interurban car has crossed such highway, street or traveled place."

explained reason plaintiff remained at the left or south side of the car until it was struck by the train. In the collision his car was knocked in a southerly direction, causing it to strike plaintiff. The car came to rest about 75 feet south of the crossing a few feet east of the railroad track, with its engine still running and its headlights burning. After defendant's train was brought to a stop, 13 cars and the 3 engines were south of the crossing.

There was ample time for plaintiff to extricate himself from a place of danger, after his car was stopped upon the tracks, even if he had not seen the approaching train prior to that time.

Under an effective ordinance of the City of Mullins the maximum speed limit for all trains was 20 miles per hour. Defendant's train which was being driven between 20–25 m. p. h. before its emergency brakes were applied with full force was in violation of this ordinance as it approached the crossing.

The engine crew in charge of defendant's train first saw plaintiff's car drive up on the tracks when the train was 8 to 10 car lengths away [400 to 500 feet]. They did not realize that the car would not be removed from the tracks until the occupants were abandoning the same, and the train was approximately 4 to 6 cars [200 to 300 feet] from the crossing. Then the emergency brakes were applied with full force and alarm signals were given. Defendant's engine crew had no reasonable basis to realize that the car would remain on the tracks until they saw its occupants fleeing therefrom, when the train was within 300 feet of the crossing, then it was too late to stop the train under any circumstances.

The testimony of the train's engineer, which was not contradicted or impeached, established that defendant's train, or one of similar composition, would require 20 to 21 car lengths [1000 to 1100 feet] to stop in emergency at approximately 20 m. p. h. He also testified that it would require approximately one mile to stop such a train at 45–50 miles per hour. Therefore, it was not possible for the en-

gine crew to stop the train before reaching the crossing, even if emergency brakes had been applied when they first saw plaintiff's car come to a stop on the tracks, when they were 400 to 500 feet away. Needless to say, there was no hope of stopping the train short of the crossing from the point where the crew first realized that the car was being abandoned on the tracks. Under the circumstances the train made a good stop.

## CONCLUSIONS OF LAW

This is a diversity suit between plaintiff, a resident and citizen of the State of South Carolina, and defendant, a corporation duly created and existing under and by virtue of the laws of the State of Virginia; the amount in controversy, exclusive of interest and costs, exceeds $10,-000.00. Therefore, the court has jurisdiction of the parties and of the subject matter of the action.

■ The rights and duties of the parties hereto are governed by the laws of the State of South Carolina, the place where the collision occurred.

The complaint alleges that plaintiff's personal injuries and property damages were caused by the negligence, heedlessness and recklessness of defendant, acting by and through its duly authorized agents and employees, who were operating its train on the said occasion. Defendant's answer denies any negligence, recklessness and heedlessness on its part and sets up the affirmative defense of contributory negligence, recklessness wilfulness and wantonness. Therefore, the legal issues in this crossing accident pertain to the negligence, recklessness, wilfulness and wantonness of defendant in the operation of its train and of plaintiff in the operation of his automobile on said occasion; and proximate cause.

■ Inasmuch as the court has made a finding of fact that the statutory signals required by Section 58–743, supra, were being properly given as defendant's train approached the subject crossing at the time in question, Section 58–1004 of the 1962 Code of Laws of South Carolina is not applicable, since it only comes into

play when a railroad company neglects to give the statutory signals required by said Section 58–743, supra. Thus, under common law principles if defendant were guilty of simple negligence which proximately resulted or contributed to the collision, then simple negligence on the part of plaintiff which contributed as a proximate cause to the collision would be a complete bar to plaintiff's recovery herein; and if defendant were guilty of actionable gross negligence, recklessness, wilfulness and wantonness then actionable, contributory gross negligence, recklessness, wilfulness, and wantonness would be required before plaintiff would be defeated in his right to recover damages.

■ On the issues of negligence, recklessness, heedlessness, wilfulness and wantonness of the defendant, proximate cause, and the amount and extent of the injuries and damages suffered by plaintiff, the burden of proof by the preponderance or greater weight of the evidence rests upon plaintiff. Upon its plea of contributory negligence, recklessness, wilfulness and wantonness the burden shifts to defendant to establish such defense by the same yardstick.

■■ In determining the issues herein involved in accordance with the common law principles applicable to the circumstances of this case, the court is mindful of the fact that the duty is imposed upon both the railroad and the traveler to exercise due care for their own safety as well as for the safety of others in a manner that is commensurate with due care under all the circumstances. The common law of South Carolina imposes the duty upon a traveler to use reasonable care and caution and to exercise his senses of sight and hearing for his own safety and protection. He is required to look and listen for an approaching train before venturing to cross a railroad track at a crossing on a highway, using such caution as is commensurate with all the existing circumstances.

■ A motorist crossing a railroad track is not bound under the law to see or hear an approaching train, but he is bound to make a reasonable effort to see and hear what a man of ordinary reason and prudence would see and hear under like circumstances. If he fails to observe an approaching train dangerously near the crossing, which the evidence shows that he could or should have discovered in the exercise of ordinary care, such failure to look and listen, and failure to stop in a place of safety amounts to negligence on his part. However, a traveler when approaching a crossing is only charged with the duty to exercise due care and ordinary prudence in looking and listening for approaching trains, and to look out for his own safety; and he is only charged with seeing and hearing what an ordinary person would see and hear under like circumstances. This is not an absolute rule and is qualified by attendant circumstances, that is, the presence and influence of unusual or extraordinary conditions not created or controlled by the traveler himself. Where a railroad crosses a public highway a motorist using the highway has a right to use the crossing just as much as the railroad has a right to use it; and it is the common law duty of the railroad to give such signals and to take such actions as are reasonably sufficient to protect travelers using the crossing. There is a mutual duty upon the traveler and the railroad to exercise due care.

The South Carolina Supreme Court has clearly set forth the duties and responsibilities of a traveler approaching a crossing or railroad track in many of its lucid opinions. As was stated in Robison v. Atlantic Coast Line Railroad Co., 179 S.C. 493, 184 S.E. 96:

"It has been well said that it is always train time at a railroad crossing. The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train. Chisolm v. Seaboard Air Line Railway Company, 121 S.C. 394, 114 S.E. 500. And, because of the dan-

ger, there is imposed upon such person the duty of reasonable care and caution and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and, subject to applicable qualifications and limitations, he is required at least to look and to listen for an approaching engine or train before venturing to cross the track; and, if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and, if such failure results in injury, he is left without a remedy.

"The rule was stated in Chisolm v. Seaboard Air' Line Railway Company, supra, that he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, 'and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective'."

In Carter v. Atlantic Coast Line Railroad Co., 194 S.C. 494, 10 S.E.2d 17, the Supreme Court restated the duty of a motorist in the following language:

"A rule firmly established by the foregoing cases is that a traveler on reaching a railroad crossing and before attempting to go upon the track, must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains; if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control, he must look and listen at a place and in a manner that will make the use of his senses effective. Another principle which the cases sustain is that the duty of a traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances."

In Truett v. Atlantic Coast Line Railroad Company, 206 S.C. 144, 33 S.E.2d 396, a case involving a factual situation similar in many respects to the case at bar, the Supreme Court had this to say:

"Under the circumstances, we think the conduct of appellant after the car stalled was not only negligent, but showed gross negligence. It is 'well settled in this State that when one undertakes to go over a crossing in front of an immediately approaching train, he is guilty of gross contributory negligence as a matter of law.' Howell v. Southern R. Co., 192 S.C. 152, 5 S.E.2d 860, 861. We think it is equally as negligent to remain on a crossing when the train is immediately approaching where there is an opportunity for such person to get out of the way of the approaching train."

In the very recent case of Russell, Administrator v. Seaboard Air Line Railroad Company, S.C., 144 S.E.2d 799 [1965] the court held:

"In the absence of circumstances reasonably tending to distract the attention or blunt the vigilance of a man of ordinary prudence and self-possession, a traveler who enters upon a conspicuously marked crossing, or one with which he is familiar, in the path of an approaching train, without the exercise of even slight care to discover the presence of so obvious and great a peril, when had he but looked or listened, he must have discovered it, is guilty of gross contributory negligence and recklessness as a matter of law." [Citations omitted].

 Inasmuch as defendant's train on the occasion in question was being operated at a speed admittedly in excess of the maximum permitted by a valid ordinance of the City of Mullins, defendant was guilty of negligence as a matter of law. However, this does not relieve plaintiff of his burden of proving that such speed which was only slightly above the maximum permitted by the ordinance

was the proximate cause of the collision and his resulting injuries and damages. The South Carolina Supreme Court, in Harrison v. Atlantic Coast Line Railroad Company, 196 S.C. 259, 13 S.E.2d 137, in passing upon this question enunciated:

> "The violation of a valid city ordinance regulating the speed of trains within a municipality, and the violation of the statutory law requiring the giving of crossing signals, resulting in injury to another, is negligence as a matter of law, but the issue of proximate cause is for the jury. The mere omission to give the statutory signals and the failure to observe the municipal speed ordinance do not relieve the traveler from the imputation of negligence if he fails on his part to exercise ordinary care in looking and listening."

Applying the factual situation found by the court to the legal principles hereinabove set forth, I conclude that defendant fully complied with Section 58–743, supra, by giving the statutory signals therein required, thereby making Section 58–1004, supra, inapplicable herein. I further find and conclude that there were no unusual circumstances created by defendant in reference to the actual crossing or the approaches thereto which would have been diverting influences to plaintiff so as to excuse him of his common law duty to look and to listen and to see and hear the approaching train. I also conclude that defendant fully complied with its common law duty to give appropriate signals and warnings of its approaching train, in addition to the requisite statutory signals, as were reasonably sufficient to warn the plaintiff, inasmuch as its automatic electric red blinking lights and bells on either side of the crossing were in full operation as plaintiff approached and drove upon the tracks.

I further conclude that defendant was guilty of simple negligence by violating the Mullins City Ordinance which governed the speed of defendant's train on the occasion in question. Al-

though the violation of the municipal ordinance in reference to speed is negligence *per se,* and may be some evidence of recklessness and wilfulness when considered with all other circumstances existing, I conclude that defendant's excess speed was so slight on this occasion, when it is considered along with all other relevant circumstances, that it was not sufficient to constitute gross negligence, recklessness, or wilfulness on defendant's part. Furthermore, defendant's simple negligence in violating the municipal speed ordinance was not a contributing or concurring proximate cause of the collision. Bramlett v. Southern Railway Company, 234 S.C. 283, 108 S.E.2d 91. In Bramlett, which involved a factual situation quite similar to the instant case the South Carolina Supreme Court quoted with approval the following language of the Virginia Supreme Court in Seaboard Air Line Railroad Co. v. Crowder, 191 Va. 635, 62 S.E.2d 227, when it stated:

> "There is nothing in the evidence to show that the situation would have been different had the train been proceeding at a lower rate of speed. While a reduced speed would, of course, have given the operator of the car more time within which to pass safely over the track, that is beside the point here. According to the plaintiff's theory this is not the usual case of a collision between a moving train and a moving automobile, which frequently involves the question as to whether the motorist has a sufficient time to cross in front of the approaching train. Here the collision did not occur because the speed of the train did not allow the plaintiff's intestate a sufficient time to clear the track. It occurred because the automobile came to a stop on the track and remained there until the moment of the impact."

Under my view of the facts I must conclude that plaintiff, by approaching and entering upon defendant's tracks under the circumstances found to exist here and in failing to remove him-

self from his automobile and the place of danger where he remained, although he had more than adequate time to get to a place of complete safety after his car came to a stop on the tracks, was unquestionably guilty of contributory negligence, recklessness, heedlessness and wilfulness as a matter of law, which constituted the sole proximate cause of the collision and his resulting injuries and damages, and without which the same would not have occurred.

In reference to plaintiff's assertion of the doctrine of last clear chance, it is quite obvious that the evidence here demonstrated that defendant had no last clear chance to avoid the collision inasmuch as its crew could not have possibly brought defendant's train to a stop prior to its reaching the crossing from the time plaintiff's car was first driven upon defendant's tracks. Bramlett v. Southern Railway Company, supra. Furthermore, by the exercise of reasonable diligence plaintiff could have removed himself from the place of danger after his car came to rest on the tracks in the path of the approaching locomotive.

The South Carolina Supreme Court aptly summarized the last clear chance doctrine in this State in Jones v. Atlanta-Charlotte Air Line R. Co. et al., 218 S.C. 537, 63 S.E.2d 476, 26 A.L.R.2d 297, as follows:

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm, (a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and (b) the defendant 1. knows of the plaintiff's situation and realizes the helpless peril involved therein; or 2. knows of the plaintiff's situation and has reason to realize the peril involved therein; or 3. would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

The foregoing was quoted with approval by my learned colleague, District Judge C. C. Wyche in Page v. United States, 212 F.Supp. 668 [E.D. S.C. 1963]. From the evidence plaintiff has failed to establish his right to invoke the last clear chance doctrine.

For the foregoing reasons, it is my opinion that judgment in this case should be for defendant. It is, therefore,

Ordered that the complaint in the within entitled action be, and the same is hereby dismissed and judgment entered in favor of the defendant, Seaboard Air Line Railroad Company, [erroneously named in the title of said action as Seaboard Airline Railway Company] against the plaintiff, W. H. Graham.