Laura G. HORNE, Executrix of the Estate of Ansel E. Horne, deceased, Plaintiff,

v.

SEABOARD COAST LINE RAILROAD COMPANY, Defendant.

Civ. A. No. 68–424.

United States District Court
D. South Carolina,
Columbia Division.

July 9, 1969.

Frank L. Taylor, Geddes H. Martin, Columbia, S. C., for plaintiff.

H. Simmons Tate, Jr., Boyd, Bruton, Knowlton & Tate, Columbia, S. C., for defendant.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

Defendant has moved for summary judgment in this suit to recover for the alleged wrongful death of plaintiff's testate who was killed when struck by a train of the defendant as he was walking or standing between the rails of defendant's tracks near Standish Street in Columbia, South Carolina.

The depositions of all eye-witnesses to the accident have been taken. There is no dispute of fact among such eye-witnesses as to the circumstances of the accident. About midday on July 11, 1967, the defendant's train was approaching the city limits of Columbia at a speed of approximately 30 miles per hour, passing over a number of crossings as it neared

and came into such city limits.[1] It was complying with the statutory laws of South Carolina providing for warning signals upon approaching and passing over road crossings. The weather was fair and visibility was good. The train crew first observed the plaintiff's testate about 900 to 1200 feet away, walking between the tracks near the Standish Street crossing. There was no established walkway along the tracks at this point. When the engineer on the train noted the testate's presence on the track, he was in the process of giving the signals for the crossing over Standish Street. As the train proceeded, the engineer saw that the testate was not getting off the track and he accordingly gave an alarm bell. The testate made no attempt to get off the track despite the signal; in fact, he seemed to "freeze", as one witness described. He remained "frozen" until struck. When the train was about 450 feet from the testate, the engineer recognized that the testate was not going to get off the track and immediately applied his emergency brakes; the lead engine stopped about 522 feet from the point of impact.

The engine was in operating condition. Its brakes worked satisfactorily; its whistle was being blown and its bell was ringing for the Standish Street crossing; its headlights were burning. It was, however, operating at a greater speed than the ordinance of the City of Columbia authorized for crossings over public streets within such City.

There was nothing unusual about either the appearance or actions of the deceased when first observed by the train crew. His walk was brisk. His manner gave no indication to the train crew that he was not in full possession of his faculties or that he could not see the approaching train or hear its signals of approach.

It appears that for some time prior to the accident, the testate had been under psychiatric care for psychomotor seizures, organic brain disturbance and depression. He had, however, been discharged some ten days before the accident, though his condition was expected to deteriorate.

Based upon these undisputed facts, the defendant has moved for summary judgment, asserting that, though the defendant may have been negligent in operating its train at the speed it did, plaintiff is barred from recovery by the gross contributory negligence of plaintiff's testate. In pressing its motion, the defendant emphasizes that there can be no genuine issue of fact with reference to the gross contributory negligence of the testate. This is thus an appropriate case, it argues, for summary judgment.

■ It has often been stated that summary judgments are not favored in negligence cases. However, our Court has indicated that such remedy is appropriate where under "the material facts of the case", it is indisputably clear that plaintiff cannot, as a matter of law, recover. Thus, in the recent case of Bland v. Norfolk and Southern Railroad Company, Inc. (C.C.A. N.C.1969) 406 F.2d 863, the Court said: "It is true that because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment. (Citing cases.) But this is not to say that where, as here, that unusual case is encountered, a plaintiff must have his day in court even though there is nothing to be tried." See, also, Berry v. Atlantic Coast Line Railroad Company (C.C.A. S.C.1960) 273 F.2d 572, 581–583 cert. denied 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011. This is such a case.

The plaintiff does not disagree with the defendant's position that the testate

1. The city ordinance of Columbia fixes the legal speed of trains over crossings in that city at 10 miles per hour. This accident did not occur at a crossing and, for this reason, the defendant questions the applicability of the ordinance. Traveling at the speed it was, though, the train could not have reduced its speed to 10 miles an hour at the Standish Street crossing, which it was approaching at the time of the accident. I have assumed, therefore, that the train was being operated at an excessive rate of speed at the time of the impact.

was guilty of such contributory negligence as would normally bar recovery herein. He relies, however, on the doctrine of "last clear chance", contending that, after the defendant's train crew discovered testate in a position of helpless peril, it failed to exercise due care to avoid hitting testate.

■ There are several essential elements to the doctrine of "last clear chance". Among these is the requirement, not only that the injured party be helpless in a perilous situation, but that the defendant either recognize, or, in the exercise of proper care, should have recognized the perilous condition of the injured party. And, then, *after* it has recognized that perilous condition, it is equally necessary to prove, in order to support a recovery under this doctrine, that the defendant failed to use due care to avoid injuring plaintiff. Or, to state it with more definiteness as applied to this case, it is necessary under the doctrine, that, after discovering the testate's peril, the defendant's engineer, by promptly applying the emergency brakes, could have stopped the train before it struck the testate.[2]

As I have noted, the defendant's crew was from 900 to 1200 feet from the testate when they first observed the testate. There was nothing about his conduct at that time to suggest to the train crew that the testate was in a perilous condition.[3] He could easily have stepped off the tracks long before the train reached him. There was no reason for the engineer to assume that the testate

was oblivious to the approaching train, with its shrieking whistle and ringing bell. It was only when the engineer noted that the testate was making no effort to get off the track, that he recognized that the testate was not going to step off the tracks. The engineer seemingly fixes this point about 450 feet from the point of impact. Whether it was 450 feet or 600 feet is immaterial. The record shows that, with the emergency brakes applied, it took the train 972 feet within which to stop. There is no contention that the emergency brakes were not in proper operating condition, or, operating at the speed it was, could have been stopped in a shorter distance.

■ The real crux of plaintiff's argument is that, if the train had been operating at a lawful and proper rate of speed (i.e., at 10 miles per hour as required by the city ordinance), it would have been possible, after the engineer recognized the testate's peril, for the train to have been stopped in a much shorter distance than it did, without hitting the testate. But the "last clear chance" doctrine is not related to the act of primary or initial negligence; it has to do with the defendant's conduct *after* the peril of the deceased was recognized, or should have been recognized, by the defendant. It does not depend on whether the defendant had been guilty of antecedent negligence. It applies irrespective of whether the defendant was or was not guilty of antecedent negligence. In fact, it presupposes a perilous condition existing on account of the negligence of either or both plaintiff and

2. See, for a discussion of the elements of the doctrine of "last clear chance" under the laws of South Carolina, Jones v. Atlanta-Charlotte Air Line R. Co. (1951) 218 S.C. 537, 547–548, 63 S.E.2d 476, 26 A.L.R.2d 297; Nettles v. Southern Ry. Co. (1947) 211 S.C. 187, 199–200, 44 S.E.2d 321; and Graham v. Seaboard Air Line Railroad Co. (D.C.S.C.1966) 250 F. Supp. 566, 574.

3. See, Irby v. Southern Railway Company (1957) 246 N.C. 384, 98 S.E.2d 349, 354, 70 A.L.R.2d 1, 8–9:
    "Indeed the doctrine of last clear chance does not apply in cases where

the person upon the track of a railroad, at the time, is in apparent possession of his strength and faculties, the engineer of the train that produces the injury having no information to the contrary. Under such circumstances the engineer is not required to stop the train, or to even slacken its speed, for the reason he may assume until the very moment of impact that such person will use his faculties for his own protection and leave the track in time to avoid injury."

defendant but assumes that there was a time after such negligence when the defendant could and the plaintiff's testate could not, avert the accident. Thus, in the Second Restatement of the Law of Torts, p. 533, it is stated: "If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable." To the same effect is Prosser on Torts (3d Ed., 1964), pp. 442–3. Again, 38 Am.Juris., p. 904, puts it that, "The doctrine cannot rest upon a breach of duty by the defendant before the peril arose, sometimes referred to as primary negligence." In the Annotation in 70 A.L.R.2d 9, 22, the commentator summarizes the authorities on this point thus:

"It is generally recognized, either expressly or by implication, in the cases dealing with the last clear chance doctrine, that it is what the defendant did or failed to do after the plaintiff was imperiled that constitutes the breach of duty for which the defendant is held liable under the doctrine, and that the doctrine cannot rest upon a breach of duty by the defendant before the peril arose, variously referred to as 'primary,' 'antecedent,' 'pre-existing,' or 'prior' negligence."

Indeed, the Restatement includes, by way of illustration, a factual statement almost identical with that presented here. Thus at pp. 533–4, it illustrates the rule with the statement: "So too, if a railroad train is exceeding the statutory speed limit in approaching a level crossing but the engineer does not see the plaintiff's helpless peril on the crossing in time to stop the train, the fact that the train could have been stopped in the distance between the two points if it had been going at the lawful speed is not enough to make the defendant liable to the negligent plaintiff."

This rule that the "last clear chance" doctrine may not be predicated upon "primary" or "antecedent" negligence but is confined in operation to negligence after discovery of the peril of the helpless plaintiff has been recognized in two recent decisions of this Court made under South Carolina law. Thus, in Way v. Seaboard Air Line Railroad Company (D.C. S.C.1967) 270 F.Supp. 440, 446–447 the Court said:

"More important, however, the doctrine assumes that after discovery of the intestate or after he should have been discovered, there was something the train crew could have done to avoid injury. Bramlett v. Southern Rwy. Co., 234 S.C. 283, 108 S.E.2d 91 (1959). In other words, there must be railroad negligence *after* discovery of the intestate's helplessness, or *after* he should have been discovered."

Again, in Britt v. Seaboard Coast Line Railroad Company (D.C. S.C.1968) 281 F.Supp. 481, 487, it was stated:

"Without reviewing all these elements, it is sufficient for our purposes to consider the third element as stated in the *Jones* case (Jones v. Atlanta C. Air Line R. Co. p. 548, 218 S.C., p. 480, 63 S.E.2d), i.e., that the defendant, after the discoverable peril of the deceased, 'thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff (deceased).'"

Accordingly, the fact that the defendant may have been operating its train at a speed greater than that allowed by the city ordinance is not the critical issue. As we have seen, the critical issue is: Did the defendant, *after* it discovered, or, in the exercise of due care, should have discovered, that the testate was helpless and in peril, exercise due care to avoid hitting him? The record is plain and undisputed that it did; there is no genuine issue of fact on this question. In short, just as in the *Berry Case, supra* (p. 583, 273 F.2d), "Here the parties do not disagree as to the material facts of the case, their disagreement resting solely upon the application of the law to the facts." As we have seen, plaintiff's contention that the

doctrine of "last clear chance" may rest on the defendant's alleged "prior" or "primary" negligence before discovery of the peril, is not supported by the authorities. Summary judgment represents, under such circumstances, the appropriate remedy.

Accordingly, let summary judgment be entered in favor of the defendant.

And it is so ordered.